<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JON PAUL MOORE, | Civil No. 09-2217 (JAP) |
| Plaintiff, | |
| v. | <u>**OPINION**</u> |
| EDMOND CUCCHI, et al., | |
| Defendants. | |

**APPEARANCES:**

    JON PAUL MOORE, 390842B, Plaintiff Pro Se
    South Woods State Prison
    215 Burlington Road South
    Bridgeton, NJ  08302

    LORI A. DVORAK, Esq.
    PAUL ADAM KASTER, Esq.
    Dvorak & Associates LLC
    390 George Street, 8th Floor
    New Brunswick, NJ 08901

    THOMAS J. DECKER, Esq.
    Decker & Magaw, Esqs.
    507 Westfield Avenue
    Westfield, NJ 07090

**PISANO**, District Judge:

    Plaintiff, Jon Paul Moore, a prisoner incarcerated at South Woods State Prison, submitted a Complaint and a motion to file an amended complaint.  (Dkt. 1 & 5.)  By Order filed July 23, 2010, this Court granted Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, granted his motion to file an amended complaint, and gave Plaintiff 30 days to file an amended complaint.  (Dkt.

14.) Plaintiff did not file an amended complaint. The government defendants filed an Answer to the Complaint (Dkt. 16) and a motion for summary judgment. (Dkt. 28 & 40). Plaintiff filed opposition to the summary judgment motion and in his response, Plaintiff states that the motion to file an amended complaint was, in fact, the amended complaint itself. (Dkt. 43.)

As required by the Prison Litigation Reform Act, see 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court has now screened the Complaint to identify cognizable claims, and will dismiss the Complaint, as amended, for failure to state a claim upon which relief may be granted, without prejudice to the filing of an amended complaint. The Court will further decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and will deny defendants' motion for summary judgment as moot. Id.

## I. BACKGROUND

Plaintiff asserts violation of his constitutional rights under 42 U.S.C. § 1983 arising from his pretrial detention at Middlesex County Adult Correctional Center ("MCACC"). The named defendants are MCACC[1]; Edmond Cicchi, Warden of MCACC; Brian Fenyak, Business Manager of MCACC; Doctors Anderson and Talbot; Joyce Pirre, Director of Program Services for CFG Health Systems; Sandra Vargas, Health Administrator for CFG Health Systems; Joanne Loppe, head of Medical Department; CFG Health Systems, health vendor at MCACC; Aramark, food services vendor at MCACC; and several John/Jane Does.

---

[1] Plaintiff names MCACC as defendant, but a jail is not a "person" that may be found liable under § 1983 pursuant to Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 688-90 (1978). See Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-894 (E.D. Va. 1992). This Court will construe this defendant as Middlesex County.

Plaintiff asserts that he "is a Buddhist, and does not eat meat (no flesh of any type) in accordance to religious beliefs.  Plaintiff is a lacto[]vegetarian.  Diet provided to plaintiff has insufficient calories, protein, iron, calcium and B-12 rendering diet nutritionally deficient."  (Dkt. 1 at 8.)  He alleges that he was served the following food items as substitutes for meat served to non-vegetarian inmates:  two grilled cheese sandwiches (consisting of four slices of bread and four slices of cheese), an extra portion of beans, an extra portion of cheese macaroni, and an extra portion of au gratin potatoes.  He alleges that, during his confinement at MCACC, he at times refused to eat the deficient meals and his weight fell from 213 pounds in August 2008 to 145 pounds in March 2009 (as determined by the medical staff).  Plaintiff states that he wrote numerous letters and grievances to defendants regarding the nutritionally deficient diet and the censorship of incoming and outgoing legal mail, but defendants failed to adequately respond to his grievances, to provide an adequate administrative remedy system with at least one level of appeal, or to "prevent censorship of incoming and outgoing legal mail denying right of access to courts."  (Dkt. 1 at 9.)  For violation of his constitutional rights, Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages.  (Dkt. 5 at 5.)

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] which was previously applied to determine if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual

---

[2] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

> allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983. See Iqbal, 129 S Ct. at 1947-48. Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). This Court construes the Complaint as attempting to assert the following claims under 42 U.S.C. § 1983: defendants violated the Free Exercise Clause of the First Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Due Process Clause of the Fourteenth Amendment by failing to provide a nutritionally adequate Buddhist vegetarian diet; defendants violated the Petition Clause of the First Amendment by failing to adequately respond to letters and grievances and failing to have an adequate administrative remedy system in place; and defendants violated his First Amendment right of access to courts by failing to prevent censorship of incoming and outgoing legal mail.

A.  Free Exercise Clause - Buddhist Diet

A prison's failure to provide meals that comply with an inmate's religious dietary restrictions can give rise to a First Amendment claim, see Williams v. Morton, 343 F.3d 212, 215-16 (3d Cir. 2003), and/or a claim that defendants imposed a "substantial burden on [his] religious exercise" in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") , see 42 U.S.C. § 2000cc-1. However, Plaintiff's Complaint, as amended, fails to make out a First Amendment Free Exercise claim because Plaintiff does not allege facts showing that the diet he was served at MCACC included meat or violated his Buddhist beliefs in any way. Plaintiff does not assert that he was prevented from practicing his Buddhist religion, or that any defendant interfered with his exercise of his religious beliefs. Nor does Plaintiff allege facts showing that the government imposed a substantial burden on his religious exercise,

contrary to RLUIPA. To the extent that Plaintiff alleges the existence of intermittent problems with food, those issues impose only a de minimis burden on his religion and thus do not violate the Free Exercise Clause or RLUIPA. See Tapp v. Proto, 404 Fed. App'x 563, 565 (3d Cir. 2010); Kretchmar v. Beard, 241 Fed. App'x 863, 865 (3d Cir. 2007); Rapier v. Harris, 172 F. 3d 999, 1006 n.4 (7th Cir. 1999).

It can be inferred from Plaintiff's allegations that he was not satisfied with the non-meat diet he received at MCACC. However, an inmate has no constitutional right to a diet based on personal preference. See Johnson v. Horn, 150 F. 3d 276, 283 (3d Cir. 1998) ("If the cold kosher diet currently being provided satisfies kosher requirements, then the hot kosher diet which the Inmates suggest does not accommodate the Inmates any more 'fully'; it merely accommodates them in a more palatable manner. Taste, however, is not a relevant constitutional consideration"), overruled on other grounds by DeHart v. Horn, 227 F. 3d 47, 55 (3d Cir. 2000). Plaintiff's allegations are therefore insufficient to state a Free Exercise claim against any named defendant under the Iqbal pleading standard or a claim under RLUIPA. Accordingly, this Court will dismiss the Free Exercise and RLUIPA claims for failure to state a claim upon which relief may be granted. This Court will not grant leave to amend this claim, as Plaintiff has amended the Complaint once and it is not plausible that he simply neglected to plead facts that would show unconstitutional interference with his practice of Buddhism, if same had in fact occurred.

B.  Due Process Clause - Nutritionally Inadequate Diet

Plaintiff asserts that defendants

> failed to provide nutritionally balanced religious vegetarian diet adhering to recommended basic daily food allowances by the National Academy of Sciences . . . . Diet provided to plaintiff has

> insufficient calories, proteins, iron, calcium and B-12 rendering diet nutritionally deficient.  13 August 2008 to present day - Plaintiff is served 2 grilled cheese sandwiches (consisting of 4 slices of bread and 4 slices of cheese) as a nutritional equivalent substitute . . . .  An extra portion of beans is served as a nutritional equivalent . . . .  An extra portion of cheese macaroni is served as a nutritional equivalent substitute . . . .  An extra portion of au gratin potatoes is served as a nutritional equivalent . . .

(Dkt. 1 at 8.)

Plaintiff further alleges that in October 2008, he weighed 213 pounds; on several occasions, he was "stripped naked, placed in cold cell for not accepting deficient meals;" he was transferred in and out of the medical unit; officials tried to force him to eat; and medical officials monitored his weight during the period of weight loss. (Dkt. 1 at 8, 9.)

This Court construes these allegations as an attempt to state a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment under the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), i.e., whether the conditions of confinement amounted to punishment prior to an adjudication of guilt.  As the Supreme Court explained,

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell v. Wolfish, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of . . . retained constitutional rights." Bell, 411 U.S. at 546.  "Restraints that are reasonably related to the institution's interest in maintaining jail

8

security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540. In assessing whether the conditions are reasonably related to the assigned purposes, a court "must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." Hubbard v. Taylor, 399 F.3d at 159 (quoting Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983)).

The Third Circuit has "distilled the Supreme Court's teachings in Bell into a two-part test. We must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." Hubbard v. Taylor, 538 F. 3d 229, 232 (3d Cir. 2008) (citation and internal quotation marks omitted). Moreover, the Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . . The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson, 495 F. 3d at 68.

Under the Due Process Clause, as well as the Eighth Amendment, prison officials must satisfy inmates' "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety." Helling v. McKinney, 509 U.S. 25, 32 (1993). The Constitution requires "that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it' [and] under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles v. Coughlin, 725 F. 2d 12, 15 (2d Cir. 1983) (quoting Ramos v. Lamm, 639 F. 2d 559, 571 (10th Cir. 1980)). "[A] prisoner's diet must provide adequate nutrition, but prison officials cannot be held liable under the [constitutional standard] unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." Mays v. Springborn, 575 F. 3d 643, 648 (7th Cir. 2009) (citation omitted).[3] Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." Berry v. Brady, 192 F. 3d 504, 507 (5th Cir. 1999) (quoting Talib v. Gilley, 138 F. 3d 211, 214 n.3 (5th Cir. 1998)). As the Supreme Court emphasized, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' [providing 1000 calories a day] might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686-87 (1978).

Here, Plaintiff alleges that the vegetarian diet he received while confined at MCACC was nutritionally inadequate with respect to calories, protein, calcium, iron and vitamin B-12; he

---

[3] See also Trujillo v. Williams, 465 F. 3d 1210, 1227 (10th Cir. 2006); Thompson v. Gibson, 289 F. 3d 1218, 1222 (10th Cir. 2002); Shrader v. White, 761 F. 2d 975, 986 (4th Cir. 1985).

refused to eat the deficient diet on many occasions; medical personnel consistently monitored his weight and intermittently confined him in the medical unit; and he lost almost 70 pounds during this period. Although Plaintiff asserts that the vegetarian diet was nutritionally deficient and he lost significant weight, his allegations do not satisfy Iqbal's plausibility standard, as he also alleges that on many occasions he refused to eat the meals provided and that medical officials tried to force him to eat, presumably because he was losing weight. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted). In this case, Plaintiff's "claim of a constitutional injury premised on his own refusal to eat anything when he was served [allegedly deficient] vegetarian meals does not state a violation of a constitutional right." Travillion v. Leon, 248 Fed. App'x 353, 356 (3d Cir. 2007). Under these circumstances, Plaintiff's allegations do not satisfy the objective component.

Nor do Plaintiff's allegations satisfy the subjective component of a conditions of confinement claim. First, an individual defendant in a civil rights action must participate in the alleged wrongdoing, and Plaintiff does not assert facts showing that each (or any) named individual defendant participated in providing a nutritionally inadequate diet. See Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged

wrongs"). Second, Plaintiff does not assert facts showing that each named individual defendant was deliberately indifferent to his health. To establish deliberate indifference, a plaintiff must set forth facts "show[ing] that the official was subjectively aware" of the alleged malnutrition and failed to reasonably respond to it. See Farmer v. Brennan, 511 U.S. 825, 829 (1994). However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Here, Plaintiff's allegations support the conclusion that jail officials responded reasonably to his weight loss by frequently checking his weight, transferring him to the medical unit, and trying to "force" him to eat. Plaintiff's "bare assertion" that defendants refused to provide a nutritionally adequate diet, in the context of facts indicating that medical officials were monitoring his health and trying to force him to eat, "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim, [and a]s such [are] not entitled to be assumed true." Iqbal, 129 S. Ct. at 1951 (citations and internal quotation marks omitted). Because the Complaint makes no non-conclusory factual allegations showing deliberate indifference, and because vicarious liability does not apply under § 1983, the Complaint fails to satisfy the subjective component of a conditions of confinement claim as to any named individual defendant.

Nor does the Complaint state a claim against Middlesex County, a local government entity, or Aramark or OFG Health Systems (assuming without deciding that Plaintiff's allegations satisfy the state action requirement). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a

12

government's policy or custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978). Similarly, in order for an entity such as Aramark or OFG Health Systems to be liable under § 1983, Plaintiff must show that the entity had a relevant policy or custom, and that the policy or custom caused the constitutional violation. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). A policy is made when a decisionmaker possessing final authority to establish policy with respect to the action issues a policy or edict. Id. at 584. A custom is an act that has not been formally approved by the policymaker but that is so widespread to have the force of a rule or policy. Id.

In this Complaint, Plaintiff does not assert facts showing that the allegedly deficient diet resulted from the execution of a custom or policy of Middlesex County, Aramark, or OFG Health Systems. Accordingly, this Court will dismiss the claims against these entities for failure to state a claim upon which relief may be granted. However, because it is conceivable that Plaintiff may be able to plead a valid § 1983 conditions of confinement claim for damages[4] based on his diet, this Court will grant Plaintiff leave to file an amended complaint with respect to this claim. If he files an amended complaint, Plaintiff must allege facts showing that the deprivation of a nutritionally adequate diet was sufficiently serious (regarding the amount and the duration of the malnutrition), and that each named individual defendant was deliberately indifferent to the

---

[4] Plaintiff sought declaratory and injunctive relief in the Complaint, in addition to damages. Because Plaintiff has been transferred to a state prison and a prisoner lacks standing to seek injunctive and declaratory relief if he is no longer subject to the alleged conditions, see Abdul-Akbar v. Watson, 4 F. 3d 195, 197 (3d Cir. 1993); Weaver v. Wilcox, 650 F. 2d at 27, Plaintiff does not have standing to seek injunctive and declaratory relief.

deprivation, i.e., each defendant knew of and failed to reasonably respond to his alleged malnutrition and weight loss.[5]

C.  Petition Clause - Failure to Adequately Respond to Grievances

Plaintiff contends that MCACC officials violated his First Amendment right to petition the government for redress of grievances by refusing to adequately respond to many of his administrative remedies, failing to process his remedies, and failing to provide at least one level of appeal.  The Petition Clause claim fails because "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or . . . to recognize [a grievance]." Smith v. Ark. State Highway Employees, Local 1315, 441 U.S. 463, 465 (1979); see also Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications"); San Filippo v. Bongiovanni, 30 F. 3d 424, 437 (3d Cir. 1994) ("the petition clause does not require the government to respond to every communication that the communicator may denominate a petition").

Moreover, to the extent Plaintiff seeks to assert a constitutional claim based on the government's failure to maintain and follow a grievance procedure, with a right of appeal, the claim fails.  "Prisoners do not have a constitutional right to prison grievance procedures." Heleva v. Kramer, 214 Fed. App'x 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F. 3d 641, 647 (7th Cir. 2001)); Pressley v. Johnson, 268 Fed. App'x 181, 184 (3d Cir. 2008)

---

[5] As previously stated, to establish that liability under § 1983 as to Middlesex County or Aramark, Plaintiff must plead facts showing that the constitutional deprivation was the result of a policy or custom of the entity.

("Pressley also complained about the investigation and processing of his inmate grievances. Because there is no due process right to a prison grievance procedure, Pressley's allegations did not give rise to a Fourteenth Amendment violation"); Stringer v. Bureau of Prisons, 145 Fed. App'x 751, 753 (3d Cir. 2005) (same). Because inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause, see Antonelli, 81 F.3d at 1430; Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam); Mann v. Adams, 855 F.2d 639 (9th Cir.) (per curiam), cert. denied, 488 U.S. 898 (1988),[6] defendants' failure to properly address and process Plaintiff's grievances and letters of complaint is not actionable under § 1983. This claim will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

D.  First Amendment Access to Courts - Censorship of Legal Mail

Standing of detainees to pursue an access to courts claim is governed by Lewis v. Casey, 518 U.S. 343, 349 (1996). See Tucker v. Arnold, 361 Fed. App'x 409, 411 (3d Cir. 2010). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647 (2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). "The complaint must

---

[6] "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The [government] may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice [it] does not create an independent substantive right." Olim v. Wakinekona, 461 U.S. 238, 250-251 (1983); see also Hewitt v. Helms, 459 U.S. 460, 469 (1983) ("we have never held that statutes and regulations governing daily operation of a prison system conferred any liberty interest in and of themselves").

describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Monroe at 205-206 (quoting Christopher at 416-17). For example, in Monroe, the United States Court of Appeals for the Third Circuit affirmed dismissal of inmates' access to the courts claim for failure to state a claim:

> In this case, the defendants confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes. In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike. That claim, on its face, was insufficient to state a claim under Harbury. So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them for their lost claims. Even liberally construing their complaints as we must do for pro se litigants, they do not sufficiently allege that they have suffered actual injury.

Monroe, 536 F. 3d at 206 (citations and footnote omitted).

In this Complaint, Plaintiff asserts that defendants "failed to prevent censorship of incoming and outgoing legal mail denying right to access to the courts." (Dkt. 1 at 9.) This Court will dismiss the access to courts claim, first because Plaintiff fails to assert facts showing actual injury to a non-frivolous legal claim resulted from the censorship. Second, the Complaint fails to assert facts showing that any named defendant participated in the censorship of his mail on any occasion or instructed subordinates to censor his mail. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* [and] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. In

Iqbal, the Supreme Court rejected the proposition that a supervisory defendant can be liable for "knowledge and acquiescence in their subordinates' [misconduct.]" Id.

> [Plaintiff's] conception of 'supervisory liability" is inconsistent with his accurate stipulation that [persons] may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action - where masters do not answer for the torts of their servants - the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

Iqbal, 129 S. Ct. at 1949.

As Plaintiff fails to assert facts showing that any named defendant actually censored his mail or instructed subordinates to censor his mail, and he fails to allege facts showing actual injury to a non-frivolous legal claim, this Court will dismiss the access to courts claim. However, because Plaintiff may be able to cure these deficiencies, this Court will grant him leave to file a final amended complaint stating an access to courts claim that is complete on its face (without reference to the original Complaint).

E.  Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware

County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  Growth Horizons, Inc., 983 F.2d at 1284 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  United Mine Workers v. Gibbs, 383 U.S. at 726; Growth Horizons, Inc., 983 F.2d at 1284-1285.  In this case, since this Court is dismissing every claim over which it had original subject matter jurisdiction, this Court declines at this juncture to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## V.  CONCLUSION

Based on the foregoing, this Court will dismiss the federal claims in the Complaint, decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and deny the motion for summary judgment as moot.

/s/ JOEL A. PISANO
United States District Judge

Dated: September 29, 2011

18